IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| BOLLORÈ, S.A., NORTH ATLANTIC TRADING COMPANY, and NORTH ATLANTIC OPERATING COMPANY | * | CIVIL ACTION NO. 05-1679 |
| | * | JUDGE WALTER |
| VERSUS | * | MAGISTRATE JUDGE HAYES |
| WAJDI ABDULAZIZ BEYDOUN, TOBACCO WORLD I, TOBACCO WORLD II, TOBACCO WORLD III, TOBACCO WORLD IV, TOBACCO WORLD V, UNICOM GRAFIX, INC., GERALD A. SCHUCHARDT, TUCSON DIE, INC., STEVEN P. O'BRIEN. STACEY A. O'BRIEN, AL-SHARQUE GROCERY STORE, INC., MOHAMAD BAZZI, and MANUEL BRACAMONTE | | |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Dismiss or, Alternatively, for a More Definite Statement filed by defendants Supply One, Inc. ("Supply One") and Whitmark Packaging ("Whitmark"), two of the named defendants herein (collectively "Moving Defendants"). (Doc. No. 28). Plaintiffs, Bollorè, S.A. ("Bolloré"), North Atlantic Trading Company ("NATC"), and North Atlantic Operating Company ("NAOC") (collectively "Plaintiffs") oppose the motion. (Doc. No. 35). Moving Defendants have filed a brief in reply to Plaintiffs' opposition. (Doc. No. 41). For reasons stated below, it is recommended that the motion be **GRANTED as to Supply One and DENIED as to Whitmark.**

## BACKGROUND

This action arises out of Moving Defendants' alleged participation in a commercial counterfeiting scheme involving the manufacture, distribution, and sale of forged Zig-Zag®

brand cigarette paper products.  Plaintiffs[1], the owners and exclusive licensees of the federally registered trademarks and copyrights for Zig-Zag® brand cigarette paper products, seek recovery from Moving Defendants[2] and others for trademark infringement, unfair competition and false designations of origin, trademark dilution, copyright infringement, and civil conspiracy.

According to Plaintiffs' complaint, the individual "mastermind" of the counterfeiting scheme, Wajdi Abdulaziz Beydoun (a/k/a Wajdi A. Beydoun, a/k/a Joe Bazzi, a/k/a Mohamed Beydoun) ("Beydoun"), purchased imitation Zig-Zag® cigarette-rolling papers in foreign markets for eventual resale in the United States.  Beydoun, along with Manuel Bracamonte ("Bracamonte"), enlisted various other defendants, including Moving Defendants, to print booklets, cartons, and shipping cases nearly identical to those used for authentic Zig-Zag® products.  After assembling the cigarette paper booklets and organizing the forged shipping cartons in Mexico, Beydoun and Bracamonte allegedly imported the products into the United States and distributed them nationwide for sale, including in Louisiana.

In addition to the general claims and allegations described above, Moving Defendants, after receiving a request from one of Beydoun's retail stores, are alleged to have printed shipping cartons bearing the Plaintiffs' trademark logo and/or copyrighted design, without proper authorization or permission.  Plaintiffs allege that Moving Defendants were aware, or reasonably should have been aware, that their actions were aiding in the improper manufacture and distribution of counterfeit goods.

---

[1] Bolloré is a French corporation, while NATC and its wholly-owned subsidiary, NAOC, are both Delaware corporations with principal places of business in New York.  Doc. No. 8, ¶¶ 10-12.

[2] According to the Plaintiffs' complaint, Whitmark is an Arizona corporation with its principal place of business in Arizona, and Supply One is a Delaware corporation with its principal place of business in Pennsylvania.  For purposes of personal jurisdiction, Plaintiffs claim that Whitmark is merely the alter ego of Supply One subject to its control.  Doc. No. 8, ¶¶ 24-25.

Plaintiffs' original complaint, filed on September 23, 2005, named various individuals and corporations as defendants, including five of Beydoun's retail stores that share the common name "Tobacco World", but are differentiated by roman numerals. Doc. No. 1, p. 2. However, after learning that the corporations owning three of the stores had been dissolved, Plaintiffs amended their complaint accordingly and also added Moving Defendants.

Moving Defendants assert that the Court cannot exercise personal jurisdiction over them and that, even if it could, Plaintiffs' complaint is so vague and ambiguous that they are entitled to a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure.

Plaintiffs claim that Moving Defendants' argument is based on false statements of fact. Plaintiffs claim that Moving Defendants -- Supply One as the parent corporation and Whitmark as its subsidiary and alter ego - knowingly entered into contracts for the sale of the infringing shipping cartons to Tobacco World, a defendant and Louisiana domiciliary. Thus, Plaintiffs claim Moving Defendants purposefully directed their activities toward Louisiana, established contacts with the state that gave rise to the present action, and have failed to demonstrate that the exercise of jurisdiction would be unfair or unreasonable. Plaintiffs also claim that a more definite statement is not warranted because their complaint fully satisfies the requirements for notice pleading.

## LAW AND ANALYSIS

<u>Personal Jurisdiction over Whitmark</u>

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). A plaintiff's burden, however, varies with the type of evidence the court considers. If the court convenes a full evidentiary hearing and hears live testimony, a plaintiff must establish personal jurisdiction by a

preponderance of the evidence. *See Felch v. Transportes Lar-Mex*, 92 F.3d 320, 326 (5th Cir. 1993). If no evidentiary hearing is held, and the court limits its review to affidavits, oral deposition testimony, documents obtained through discovery, and interrogatories, a plaintiff need only make a *prima facie* showing of jurisdiction. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (citing *Thompson v. v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). Once a plaintiff makes a *prima facie* showing, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unreasonable. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006). For purposes of determining whether a plaintiff has made a *prima facie* case, all uncontroverted allegations in the complaint must be taken as true and all factual conflicts must be resolved in the plaintiff's favor. *See D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir. 1985).

Where the governing statute does not provide for service of process, a federal court may exercise personal jurisdiction over a nonresident defendant only if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the forum state's exercise of personal jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Burstein v. State Bar of Cal.*, 693 F.2d 511, 514 (5th Cir. 1982). Here, the first prong of the test is subsumed into the second, because Louisiana's long-arm statute extends jurisdiction to the full limits of due process. *See* La. Rev. Stat. Ann. § 13:3201(B). Thus, the only question is whether exercising jurisdiction over Moving Defendants satisfies federal due process requirements. *See Petroleum Helicopters, Inc. v. Avco Corp.*, 834 F.2d 510, 514 (5th Cir. 1987).

To establish specific personal jurisdiction over a nonresident defendant [3], a court must

---

[3] Based on a review of the Plaintiffs' opposition to the Moving Defendants' motion, it is evident that the Plaintiffs concede the inability of the Court to exercise general jurisdiction over the Moving Defendants. Thus, the Court's inquiry is limited to specific jurisdiction.

4

consider the following factors: (1) whether the defendant purposefully directed its activities toward the forum state, or, by establishing "minimum contacts" with the forum state, availed itself of the state's benefits and protections; (2) whether the plaintiff's cause of action arises out of or relates to the defendant's forum-related activities; and (3) whether the exercise of jurisdiction over the defendant is fair and reasonable. *Nuovo Pignone*, 310 F.3d at 378 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). The first step of this analysis, purposeful availment, "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the unilateral activity of another party or third person." *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871-2 (5th Cir. 1999) (quoting *Burger King*, 471 U.S. at 475)).

### A. Minimum Contacts

Although a single purposeful contact with a forum state is sufficient to confer specific personal jurisdiction over a nonresident defendant, the contact must nevertheless "be such that it is foreseeable that the defendant 'should reasonably anticipate being haled into court there.'" *Id.* at 872 (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)). For instance, the Fifth Circuit has stated that "[a] contract with an out-of-state party alone, although relevant, does not automatically establish sufficient minimum contacts." *Id.* Following Supreme Court precedent, the court has reiterated:

> [A] "contract' is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." . . . It is these factors - prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing - that must be evaluated in determining whether the defendants purposefully established minimum contacts within the forum.

*Spademan*, 772 F.2d at 1193 (quoting *Burger King*, 471 U.S. at 479); *Gundle Lining Constr.*

5

*Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996). A single contract becomes substantially material when, pursuant to that contract, a nonresident defendant places a product or good in the "stream of commerce" and does so with the awareness or reasonable foreseeability that the product or good will reach the forum state.[4] *See Luv N' Care*, 438 F.3d at 473-3; *Alpine View Company Ltd. v. Atlas Copco AB*, 205 F.3d 208, 216 (5th Cir. 2000).

In this case, Plaintiffs have alleged and provided evidence of facts sufficient to establish Whitmark's minimum contacts with Louisiana. Plaintiffs first contest the statement contained in the affidavit of Mark McArthur ("McArthur"), Whitmark's president, that "Whitmark had no dealings with Louisiana or anyone in Louisiana in connection with these boxes." *See* Moving Def.s' Exhibit A, ¶ 5. Contrary to this statement, Plaintiffs have provided invoices from Whitmark that reflect Whitmark's receipt and completion of orders for boxes and other materials from one of the Tobacco World entities located in Louisiana. *See* Pl.s' Exhibit 1; *see also* Pl.'s Exhibit 3, 52:11-21, 56:19-57:3, 87:7-13, 97:14-21, 127:14-129:3. Although these invoices confirm McArthur's testimony that Tobacco World's orders were picked up in Arizona rather than shipped to Louisiana, the invoices, consistent with Plaintiffs' statement of the facts, indicate that the orders were either placed by Beydoun (as "Joe Bazzi"), the owner of Tobacco World and alleged mastermind of the counterfeiting scheme, or were picked up by Bracamonte (as Manuel or "Manny"), a defendant in this case and ostensible agent of Tobacco World. *See id.* (listing

---

[4] Although the Fifth Circuit has repeatedly expressed its hesitation to extend the "stream of commerce" analysis beyond products liability cases, the court's remarks in other cases suggest that the analysis is relevant when: (1) a nonresident defendant places an infringing good or product into the stream of commerce with the expectation that the good would reach the forum state; and (2) a connection exists between the plaintiff's injury, the forum state, and the nonresident defendant's delivery of the infringing good into the stream of commerce, *see Alpine View Company Ltd. v. Atlas Copco AB*, 205 F.3d 208, 216 (5th Cir. 2000); *Isbell v. DM Records, Inc.*, No. 02-1408, 2004 WL 1243153, at *8-10 (N.D. Tex. June 4, 2004); *Excel Music v. Simone*, No. 95-3626, 1996 WL 5708, at *5 (E.D. La. Jan. 5, 1996). Both factors exist in this case.

both "Joe" and "Manuel" as buyers); *see also* Pl.s' Exhibit 3, 42:20-43:2; 112:2-117:2. Furthermore, despite being picked up in Arizona, the Plaintiffs allege that Beydoun or Bracamonte transported the infringing boxes containing the counterfeit cigarette paper products to Louisiana for distribution in Tobacco World stores. *See* Doc. No. 8, ¶ 71.

Whitmark argues that Plaintiffs' theory of personal jurisdiction would subject any entity that dealt with Bracamonte and knew of Tobacco World's location to suit in Louisiana. However, Whitmark's examples involve incidental contacts with non-infringing entities such as a cellular phone company and hotel, and are inapposite. Each putative defendant in Whitmark's examples indeed would have only "minimal notice of a connection between their customer and a Louisiana Company," *see* Doc. No. 41, p. 2. In contrast, Whitmark, an alleged direct infringer in this case[5], had substantial notice of that connection.

Taking the alleged facts as true, and resolving any conflicts in the Plaintiffs' favor, the undersigned concludes that Whitmark has sufficient contacts with Louisiana to support jurisdiction over it. Pursuant to contracts with Tobacco World, a Louisiana entity, Whitmark manufactured shipping cases with infringing labels and designs, and placed them into the stream of commerce with the awareness or reasonable foreseeability that they would be distributed in Louisiana. That Whitmark's involvement ended once the infringing cases were picked up in Arizona does not change the fact that Whitmark had knowledge of Tobacco World's location and repeatedly dealt with its owners or alleged agents. Furthermore, a clear connection exists between the Plaintiffs' claims for trademark and copyright infringement and Whitmark's business

---

[5] Whitmark claims that it is immunized under the Lanham Act for its alleged direct infringement and therefore is similar to the entities described it its examples. *See* 15 U.S.C. § 1114(2)(A). This issue, however, goes to the merits of Plaintiffs' claim and is not appropriate for consideration under the present motion. Plaintiffs' allegations describe in detail how Whitmark directly infringed protected trademarks and copyrights, and the Court is obligated, for purposes of this motion, to accept those allegations as true.

7

with Tobacco World and delivery of the allegedly infringing shipping cases into the stream of commerce. Thus, haling Whitmark into court in Louisiana would not be the result of a random, fortuitous, or attenuated contact, but is directly related to its alleged printing of infringing goods and sale of those goods to a Louisiana entity with the expectation that the goods would end up in Louisiana.

### B. Arising out of or Related to Defendant's Forum Related Activities

Plaintiffs' claims against Whitmark clearly arise out of or relate to its manufacture and sale of infringing goods to a Louisiana entity, and therefore out of its contacts with Louisiana. The claims satisfy the "relating to" requirement for specific personal jurisdiction.

### C. Fair and Reasonable

Once it is established that a defendant has sufficient contacts with the forum state and that the cause of action arises or relates to those contacts, the burden of proof shifts to the defendant to show that exercising personal jurisdiction would be unfair or unreasonable. *Wien Air Alasksa, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). Traditionally, this is a heavy burden to meet, and it requires a "compelling case." *Burger King*, 471 U.S. at 477. The factors that a court should consider in determining fairness and reasonableness are:

> (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering substantive social policies.

*Bullion v. Gillespie*, 895 F.2d 213, 216 n.5 (5th Cir. 1990).

Whitmark has failed to address how exercising personal jurisdiction in this case would be unfair or unreasonable. Applying the five factors above, Louisiana is the most, if not the only, appropriate jurisdiction for Plaintiffs' suit. Although Whitmark is an Arizona corporation, it is

8

represented by counsel from St. Louis and has failed to show how litigation in Arizona would be less burdensome. Additionally, Louisiana's interest in this litigation is clear from the activities alleged to have occurred in the state and from its current criminal prosecution of Beydoun, the alleged mastermind of the counterfeiting. *See United States v. Beydoun*, No. 04-50128 (W.D. La. filed Aug. 26, 2004). As exclusive owners of various trademarks and copyrights involved in this litigation, the Plaintiffs' interest in securing relief is patently obvious. Furthermore, judicial economy favors a single action, and it is appropriate that this action be brought in the locus where the sale and distribution of the infringing products allegedly occurred. Finally, every state, including Louisiana, has an interest in preventing and prosecuting, civilly or criminally, intellectual property infringement within its borders. Whitmark has failed to show that the exercise of jurisdiction over it would not be fair or reasonable.

For the reasons state above, it is recommended that Whitmark's motion to dismiss for lack of personal jurisdiction be **DENIED.**

Personal Jurisdiction over Supply One

Plaintiffs concede that Supply One, the parent corporation of Whitmark, has no direct contacts with Louisiana, but they claim that Whitmark's contacts should be imputed to Supply One because Whitmark is Supply One's alter ego. Plaintiffs bear the burden of proof on this issue. Piercing the corporate veil is not favored, and requires consideration of several factors. *See Gundle Lining Constr. Corp.*, 85 F.3d at 208-9 (listing twelve factors to be considered in determining whether a subsidiary is the alter ego of the parent); *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 857 (5th Cir. 2000), *cert. denied*, 531 U.S. 979 (2000); *Oyuela v. Seacor Marine (Nigeria), Inc.*, 290 F. Supp. 2d 713, 722-3 (5th Cir. 2003). Plaintiffs' **only** evidence of Whitmark's alter ego status is the incorporation of a portion of Supply One's

corporate logo into Whitmark's and the accompanying phrase "A Supply One Company."  This evidence falls far short of establishing Whitmark as Supply One's alter ego.  Thus, because the parties have had an adequate opportunity for discovery on this issue and because Plaintiffs have failed to prove that Whitmark's minimum contacts are attributable to Supply One, personal jurisdiction over Supply One does not exist.  Therefore, it is recommended that Supply One's motion to dismiss for lack of personal jurisdiction be **GRANTED.**

More Definite Statement under Rule 12(e)

FRCP Rule 8 requires only that a complaint contain a short and plain statement showing an entitlement to relief.  *See* Fed. R. Civ. P. 8(a).  Motions for a more definite statement are disfavored and are not a substitute for discovery.  *See Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (1959).

Having reviewed Plaintiffs' complaint, the undersigned finds that a more definite statement is unwarranted.  Plaintiffs' complaint fully complies with the requirements of Rule 8: Plaintiffs have alleged their ownership of various trademarks and copyrights; specific instances of Moving Defendants' willful infringement; and, with respect to Supply One, have alleged that it controlled and was responsible for Whitmark's actions.  *See* Doc. No. 35 ¶¶ 25, 27, 34-47, 51-2, 60-1, 69-71, 73-9.  Plaintiffs' complaint and brief confirm, as Moving Defendants speculated, that the use of "Defendants" throughout the complaint, especially in the causes of action and prayer for relief sections, includes Moving Defendants.  This generality, however, does not require a more definite statement, because prior portions of the complaint clearly identify the bases for the Moving Defendants' inclusion.  Overall, Moving Defendants' assertion that they "cannot effectively understand the allegations against them, raise defenses that they believe are available to them, or otherwise resolve plaintiffs' claims" is unconvincing.  Therefore, it is

recommended that Moving Defendants' alternative motion for a more definite statement be **DENIED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 24th day of April, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE